UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

DEXTER POOLE,

                    Plaintiff,                              Case No. 1:10-cv-378

v.                                                          Honorable Robert J. Jonker

MICHIGAN REFORMATORY et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The complaint, which purports to be a class action, initially was filed in the Eastern District of Michigan. On September 11, 2009, that court dismissed the three Defendant prisons and the Michigan Department of Corrections. The court also ordered Plaintiff to show cause why the remaining Defendants should not be dismissed for failure to state a claim. Plaintiff subsequently filed a variety of additional documents in response to the order to show cause. (*See* docket ##7-12.) The matter was transferred to this Court on April 12, 2010. The court has granted Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Berghuis, Walton, Smith, Palmer, Kipp, Trip, Western, Stewart, Chaney, Caruso, Finos, Strub, Pallas, McLellan and Stapleton. The Court also will dismiss Plaintiff's request for class certification, as well as his claims of retaliation, deprivation of due process, and denial of equal protection. In addition, the Court will dismiss Plaintiff's Eighth Amendment and freedom-of-association claims insofar as they arise from the restriction imposed on Plaintiff's visitation with his fiancée. The Court will serve the Eighth Amendment and freedom-of-association claims against Defendant Armstrong insofar as they arise out of the imposition of a permanent ban on all visitation.

## Discussion

### I. Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Macomb Correctional Facility, though the actions he complains of occurred while he was housed at the Earnest C. Brooks Correctional Facility (LRF) and the Michigan Reformatory (RMI). He sues the following remaining Defendants: RMI Grievance Coordinator C. Chaney; RMI Deputy Wardens (unknown) Stewart and (unknown) Kipp; RMI Assistant to the Warden (unknown) Western; RMI Assistant Deputy Warden Trip; RMI Warden Carmen Palmer; MDOC Director Patricia Caruso; MDOC Hearing Affairs Director Richard Stapleton; MDOC CFA Deputy Strub; MDOC CFA Director J. Armstrong; LRF Assistant Resident Supervisor M. Finos; Hearing Officer D. J. Pallas; LRF Inspector S. Walton; LRF Warden Mary Berghuis; LRF Deputy Warden R. Smith; and Hearing Investigator G. McLellan. Plaintiff purports to bring the action as

a class action, representing the class comprising his family members and friends, including Dextinee Poole, Veronda Bethea, Carol D. Davenport, Rosa Poole, LuRonda Randle, Asheamu Randle, Shabu [sic] Bethea, Sandi Peffaway [sic], Lureisha Kelly. (*See* Compl., docket #1-2 at 28; Aff., docket #10.)

The allegations of Plaintiff's complaint are extremely muddled and fail to identify which Defendants are responsible for what portion of the conduct in issue. Plaintiff's subsequent filings in response to the Eastern District's order to show cause add little factual detail. Plaintiff's principal claim is that he was deprived of his due process rights in 2006 when he did not receive a timely hearing before his fiancée, Veronda Bethea, was placed on permanent visitor restriction. Plaintiff claims that Lieutenant Riley issued Plaintiff a proposed permanent visitor restriction on August 5, 2006, prohibiting Plaintiff from receiving visits from his fiancée because she smuggled heroin into Earnest C. Brooks Correctional Facility. The proposed visitor restriction was mailed to Veronda Bethea and given to Plaintiff. The form notified Bethea of her rights to present a statement and to appear and informed her of the date of the hearing, September 22, 2006. (*See* Proposed Visitor Restriction, docket #1-2 at 33.) The notice was rewritten on August 21, 2006, again setting the hearing date for September 22, 2006. (Proposed Visitor Restriction, docket #1-2 at 34.) Defendant McLellan mailed the notification to Veronda Bethea on September 15, 2006. (*Id.*)

Plaintiff argues that, under MICH. COMP. LAWS §§ 791.251(2)(d), 791.252, MICH. ADMIN. CODE R. 791.3315, and MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ TT, a prisoner may not be deprived of visitation unless a hearing is held within 30 days of the notice. Plaintiff also contends that MICH. COMP. LAWS § 751.252 and MICH. ADMIN. CODE R. 791.3315 require that a prisoner be allowed to make a written statement and appear at the hearing. Plaintiff states at some

points in his complaint that his September 22, 2006 hearing date was untimely and that the hearing investigator and hearing officer did not comply with prison procedures. (*See* Compl., docket #1-2 at 9, 15, 20, 21, 23.) At other points, he alleges he never received a hearing. (*See* Compl., docket #1-2 at 10, 13, 14, 15.) Plaintiff acknowledges, however, that he received a hearing regarding the same issues prior to being placed in administrative segregation. (*See* Compl., docket #1-2 at 14.) He alleges that no written statement was taken from him or from his fiancée before the hearing and that he was not allowed to participate in a visitor restriction hearing. (*See* Compl., docket #1-2 at 9, 23.) Finally, he contends that his fiancée's request for rehearing was ignored.

Plaintiff subsequently was prosecuted and found guilty by a Muskegon County jury of being a prisoner in possession of contraband, MICH. COMP. LAWS § 800.2814, and of delivery or manufacture of less than 50 grams of heroin, MICH. COMP. LAWS § 333.7401(2)(a)(iv). Plaintiff alleges that, on September 27, 2008, he was informed that CFA Director Armstrong had extended his visitor restriction to all visitors on June 6, 2008. The latter restriction was imposed two years after the restriction was placed on his fiancée's visits and one year after Plaintiff was convicted of the felonies based on the conduct that occurred on August 5, 2006. Under the policy, visitation with a particular person that is terminated for smuggling shall be for a period of at least three years, MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ VV, with annual opportunities thereafter for review. In addition, all visitation may be terminated by the MDOC Director if a prisoner is convicted of a felony or misdemeanor that occurred during a visit, MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ XX. Plaintiff argues, however, that MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ YY requires that such a visitor restriction must be imposed within ten days after any felony conviction.

In his response to the order to show cause, Plaintiff made the following additional allegations against each of the Defendants. He alleges that Defendants Pallas and McLellan failed to obtain a written statement from either Plaintiff or his fiancée, Veronda Bethea, before the hearing on his initial visitor restriction. He alleges that Defendants Berghuis, Walton, Smith, Palmer, Kipp, Trip, Western, Stewart, Chaney, Caruso, Finos, Strub, and Armstrong were made aware of the policy violations, by way of his grievances or otherwise, but refused to take corrective action.

Plaintiff alleges that visitor restrictions were imposed in violation of various state procedures and in violation of his procedural due process rights. He also alleges that the visitor restrictions deprived him of equal protection and violated his rights under the Eighth Amendment. Further, he alleges that the visitor restrictions violated his right under the First Amendment to freedom of association. Finally, he alleges that the restriction on all visitation was imposed in retaliation for his complaints about the visitor restriction on the visits from his fianceé.

Plaintiff contends that the withdrawal of his visiting rights has resulted in wasted money for individuals who traveled to see him and impairment of his relationships with family members, including his four-year-old child. Plaintiff seeks declaratory and injunctive relief, as well as monetary and punitive damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Class Action

Plaintiff has declared his intent to file a class action, which the Court construes as a request for class certification. For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others.

*See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Mich.*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. April 25, 1996). Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiff's request for class certification.

### B. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Berghuis, Walton, Smith, Palmer, Kipp, Trip, Western, Stewart, Chaney, Caruso, Finos, and Strub other than his claim that they failed to conduct an investigation or otherwise take action in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Berghuis, Walton, Smith, Palmer, Kipp, Trip, Western, Stewart, Chaney, Caruso, Finos and Strub engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## C.    Conclusory Allegations

Plaintiff's complaint contains no allegations about Defendant Stapleton. Nor are allegations contained in the supplemental documents Plaintiff filed in response to the notice to show cause. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) (where complaint failed to allege wrongdoing by a particular defendant, it fell "far short of the standard that is necessary to weed out meritless actions"), *overruled in other part*, *Goad v. Mitchell*, 297 F.3d 497, 502-03 (6th Cir. 2002). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant Stapleton in the body of his complaint. His allegations fall far short of the minimal

pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### D. Judicial Immunity

Plaintiff names as a Defendant Hearing Officer D. J. Pallas, apparently because of the way in which Defendant Pallas conducted an allegedly inadequate hearing on the restriction of visits from Plaintiff's fianceé. Defendant Pallas is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, the complaint against Defendant Pallas will be dismissed.

## E.    Eighth Amendment

Plaintiff next alleges that the Eighth Amendment is violated by Defendants' failure to permit family members to visit him.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Supreme Court, addressing Michigan's visitation policy, has found that the policy of withdrawing of all visitation privileges for inmates with two substance abuse violations, subject to possible reinstatement of these privileges after 2 years, does not state a facial violation of the Eighth Amendment.  *See Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).  The Court upheld that portion of Michigan's visitor restriction policy against a challenge for facial invalidity under the First and Eighth Amendments.  *Id.* at 135-137.  The Supreme Court acknowledged that an individual claim based on the permanent, indefinite or entirely arbitrary withdrawal of visitation might not be entirely foreclosed.  *Id.*

In the instant case, Plaintiff complains of two separate deprivations. First, he complains that his fiancée was permanently restricted from visiting for conduct falling under MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ NN, which provides:

> NN. In the situations described below, a visit shall be terminated or disallowed and the prisoner and visitor notified that the facility will be requesting a permanent restriction of the visitor's visits with all prisoners:
>
> 1. the visitor smuggles, conspires to smuggle, or attempts to smuggle any item into or out of the facility. Staff shall ensure that the Michigan State Police are notified in accordance with PD 04.04.110 "Search and Arrest in Correctional Facilities" if the item is believed to be illegal contraband.

*Id.* The restriction on Plaintiff's visitation with his fiancée was far from inhumane under the *Overton* Court's reasoning. *Id.* The restriction did not fall within the narrow window of permanent and arbitrary restrictions on visitation about which the Supreme Court reserved judgment. *See Overton*, 539 U.S. at 137. In addition, the initial restriction was based on a legitimate government interest in prison security and was subject to being removed after three years. *See* MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ VV (permitting the visitor or the warden to request removal after three years), and ¶ FFF (permitting reconsideration every year thereafter). The claim therefore will be dismissed.

Second, Plaintiff claims that Defendant Armstrong's imposition of a permanent and unreviewable restriction on all visitors violates the Eighth Amendment. The Court will order service of this portion of Plaintiff's complaint. *Overton*, 539 U.S. at 137, recognized the possibility that a "permanent" or "indefinite" ban on all visitation would present an Eighth Amendment issue.

### E.    Procedural Due Process

Plaintiff's most extensively argued claim is that he was denied due process when his visiting privileges, first with his fiancée and then with all visitors, were restricted. Principally, Plaintiff argues that Defendants repeatedly failed to conduct hearings in a manner and within the time required under MDOC policies and Michigan statutes and administrative procedures. Plaintiff also argues that Defendant McLellan failed to adequately investigate the smuggling incident by failing to obtain statements from Plaintiff and his fiancée.

Defendant's alleged failure to comply with a state statute, administrative rule or policy does not itself rise to the level of a constitutional violation. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff's procedural due process claims are without merit. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due

process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson*, 545 U.S. at 222-23.

With respect to Plaintiff's claim that Defendant McLellan failed adequately to investigate the smuggling incident, Plaintiff fails to identify a protected liberty interest. There is no due process requirement that a hearings investigator must conduct his investigation in a certain way. *See Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (2003). In addition, since McLellan was responsible only for investigating – not deciding – the visitor restriction, his actions did not deprive Plaintiff of any liberty interest.

Moreover, it is not apparent that Plaintiff had a liberty interest in his visitation that was protected by due process. On remand following the Supreme Court's decision in *Overton*, 539 U.S. 126, the Sixth Circuit considered whether Michigan's visitor restriction policy implicates a protected liberty interest, entitling a prisoner the due process protections of a hearing. *See Bazzetta v. McGinnis*, 430 F.3d 795, 802-03 (6th Cir. 2005). The Sixth Circuit concluded that the Supreme Court had implicitly ruled on the issue by citing *Sandin* and stating that the regulation was not a "'dramatic departure from accepted standards for conditions of confinement.'" *Bazzetta*, 430 F.3d at 802 (quoting *Overton*, 539 U.S. at 137). Based on the Supreme Court's language, the Sixth Circuit held that, because the permanent, but reviewable, visitor restriction policy for substance abuse violators did not amount to an "atypical and significant hardship" in relation to the ordinary incidents of prison life, a prisoner has no liberty interest in the substance abuse regulation. *Id.*

Applying *Bazzetta*, 430 F.3d at 802, to the instant case, the Court concludes that Plaintiff has no liberty interest in the September 22, 2006 visitor restriction that permanently prohibited Plaintiff's visitation with his fiancée. As previously discussed, under Michigan procedures, a permanently restricted visitor or the warden of a facility may request removal of the visitor restriction three years after a smuggling attempt or the felony conviction that resulted in the visitor restriction. MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ VV. If removal of the restriction is denied, the restriction may be reconsidered after an additional year. MICH. DEP'T OF CORR., Policy Directive 05.03.140 (FFF). *See also King v. Caruso*, 542 F. Supp. 2d 703, 720 (E.D. Mich. 2008) (recognizing that, under *Overton*, a two-year suspension of privileges for smuggling or attempted smuggling was not an atypical or significant hardship protected by due process). It

therefore is substantially similar to the permanent two-year restriction upheld in *Bazzetta*, 430 F.3d at 802.

Moreover, even assuming that Plaintiff had a liberty interest in his visitation with his fiancée, Plaintiff apparently received a hearing before the visitor restriction on his fiancée was made permanent. Although Plaintiff argues that he should have had a separate hearing on the visitor restriction, he acknowledges that he received a hearing on the incident with respect to his placement in administrative segregation. (Compl., docket #1-2 at14.) Plaintiff argues that he should have had a separate visitor restriction hearing to refute the charges. The Supreme Court, however, has never required repeated hearings on the same incident, solely because additional sanctions are imposed. In addition, under state law, hearings for both administrative segregation and visitor restriction, as well as other matters, are under the jurisdiction of the same hearings division. *See* MICH. COMP. LAWS § 791.251. Plaintiff had his opportunity, in a hearing before the hearings officer, to contest the truthfulness of the incident underlying his loss of visitation privileges with his fiancée. As a result, even if Plaintiff had a liberty interest in his visitation with his fiancée, he received the process he was due.[1]

With respect to the termination of all of Plaintiff's visitation privileges, which was imposed on June 6, 2008 by CFA Director Armstrong, Plaintiff received ample process. As the Supreme Court long has recognized, the Due Process Clause "does not require a trial-type hearing in every conceivable case of government impairment of private interest." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 894 (1961). Instead, the requirements of due process are

---

[1] The Court notes that, in the documents attached to his complaint, Plaintiff acknowledges that he committed the smuggling infraction. (*See* Letter to Director Caruso, docket #1-2 at 30.) Because Plaintiff has admitted his guilt, it is difficult to understand how Plaintiff intended to dispute the smuggling charge.

"flexible and cal[l] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), *quoted in Wilkinson*, 545 U.S. at 224-25. In determining what process is due to an inmate facing a loss of liberty, the Court applies the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), requiring consideration of three distinct factors: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of such interest through procedures used, and probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail. *See Wilkinson*, 545 U.S. at 224-25. In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court held that, when a state seeks to revoke good-time credits, prison disciplinary proceedings must meet minimal due process requirements by (1) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (2) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (3) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. In *Wilkinson*, in contrast, the Supreme Court held that, when the liberty interest involved merely affects the conditions under which a prisoner is housed, the due process to which an inmate is entitled is less than the process established in *Wolff*, and does not require that the inmate be given the opportunity to call witnesses. *Wilkinson*, 545 U.S. at 228-29.

Under the policy in issue, the MDOC Director may restrict all visits if, among other things, the prisoner is convicted or found guilty of "[a] felony or misdemeanor that occurred during a visit." MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ XX. Here, Plaintiff was convicted by a jury of two felony offenses – for possessing heroin and as a prisoner possessing contraband –

for which he was sentenced on July 24, 2007 to respective terms of seven to thirty years and six to thirty years. Only after his trial and convictions on the felony charges was a permanent restriction placed on Plaintiff's visitation. As a result, prior to the Director's imposition of the permanent restriction on all prison visits, Plaintiff received far more than the process required in *Wilkinson* or *Wolff*: he received the full panoply of trial rights. He therefore fails to allege facts showing that he was deprived of due process.[2]

## F.    Intimate Association

Plaintiff argues that Defendants' restriction on visitation by his fiancée and Armstrong's subsequent permanent restriction on all visitation impair his constitutional right to intimate association. Upon review, the Court concludes that Plaintiff's freedom-of-association claim arising from the restriction on visitation by his fiancée fails to state a claim. The Court will order service of Plaintiff's freedom-of-association claim arising from Armstrong's permanent and unreviewable restriction on all visitation.

As the Supreme Court discussed in *Overton*, 539 U.S. at 131, a prisoner retains certain constitutional rights not inconsistent with incarceration. *Id.* (citing *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001)). The Court repeatedly has recognized, however, that "freedom of association is among the rights least compatible with incarceration." *Id.* (citing *Jones*, 433 U.S. at 125; *Hewitt v. Helms*, 459 U.S. 460 (1983)). While not deciding whether a prisoner in some particularized context retain a

---

[2]To the extent that Plaintiff contends that, under the policy, his permanent visitor restriction should have been imposed within fourteen days of his conviction, his argument is irrelevant to the issue of procedural due process. As previously discussed, Plaintiff has no constitutionally protected liberty interest in the policies or procedures of the MDOC. *Olim*, 461 U.S. at 250-51; *Laney*, 501 F.3d at 580-81.

limited right to intimate association not extinguished by incarceration, the *Overton* Court held that Michigan's visitor restriction policy, on its face, did not violate that right. *Id.* at 136. The Court applied the standard set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether the challenged regulation bore a reasonable relation to legitimate penological interests.

Under *Turner*, four factors are relevant in deciding whether a prison regulation affecting a constitutional right withstands constitutional challenge: (1) whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards, inmates and prison resources; and (4) whether there exist "ready alternatives" to the regulation. *Overton*, 539 U.S. at 132 (quoting *Turner*, 482 U.S. at 89-91). With respect to the first factor, the *Overton* Court held that the goals of preventing smuggling and of deterring the use of drugs and alcohol within the prison are legitimate governmental interests. *Id.* at 134. The Court held that a two-year minimum restriction on inmates with two substance abuse violations serve those legitimate interests.

Here, the imposition of a visitor restriction because of felony convictions arising out of the smuggling of drugs unquestionably serves the same legitimate interests recognized in *Overton*. As the *Overton* Court observed, "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior . . . ." *Id.* at 134. In the instant case, a prisoner's engagement in the smuggling of controlled substances even more seriously implicates the security and management interests of the prison than does the possession of a controlled substance by an individual prisoner. It also is more intimately connected with the visitation in issue. While the Supreme Court did not foreclose the possibility that a *de facto*

permanent ban on all visitation might cease to be rationally connected to legitimate security interests in a particular case, the restriction against Plaintiff's fiancée is rationally and closely connected to the legitimate penological interest in preventing smuggling of drugs. The Court therefore concludes that the first factor weighs in favor of upholding the challenged restriction on visitation by Plaintiff's fiancée.

In discussing the second *Turner* factor, the *Overton* Court recognized that even the complete absence of alternative means of exercising a constitutional right is not dispositive under *Turner*. However, as the Court observed, a prisoner deprived of visitation has alternative means of association with those prohibited from visiting. Such alternatives include communicating by sending messages with those who are allowed to visit,[3] written letters, and telephone calls. "Alternatives to visitation need not be ideal . . .; they need only be available." *Overton*, 539 U.S. at 135. As the *Overton* Court recognized, such alternatives weigh in favor of upholding the visitor restriction.

The third consideration to be weighed is the impact that accommodation of the right of association would have on guards, other inmates, the allocation of prison resources, and the safety of visitors. The *Overton* Court recognized that allowing a prisoner to continue to visit with a visitor who had been involved in a prior attempt to smuggle would require a significant reallocation of prison financial resources and would impair the ability of officers to protect all who are inside a prison's walls. *Id.* The Court also reasserted that, "[w]hen such consequences are present, we are 'particularly deferential' to prison administrators' regulatory judgments." *Id.* at 135 (quoting *Turner*,

_____

[3]Even a permanent bar on all visitation expressly excludes visits with attorneys or an attorney's representative and qualified clergy. *See* MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ AAA. As a result, Plaintiff retains the ability to associate by way of personally delivered messages through these individuals. In addition, the Court considers at this juncture only the visitation restriction on Plaintiff's fiancée. For those purposes, the Court assumes that Plaintiff retains his right to visit with other family members and friends.

482 U.S. at 90). Applying that reasoning to the facts of this case, the Court concludes that accommodation of Plaintiff's right of association with his fiancée would have a significant impact on the allocation of resources and the ability to secure the facility. It is apparent that substantial precautions would be necessary to prevent further smuggling episodes with a visitor who had already demonstrated a willingness to circumvent prison security.

Finally, the Court considers whether the presence of ready alternatives undermines the reasonableness of the restriction on Plaintiff's visitation with his fiancée. As the *Overton* Court reiterated, the fourth *Turner* factor "does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Id.* at 136 (citing *Turner*, 482 U.S. at 90-91). Plaintiff makes no allegations as to lesser alternatives available to the prison that would fully accommodate its interests. Instead, he merely asserts that the "least-restrictive-alternative" test should be applied, without further argument or supporting facts. Because Plaintiff wholly fails to point to an obvious regulatory alternative and because one is not readily apparent to the Court, the fourth *Turner* factor weighs in favor of upholding the restriction on Plaintiff's visitation with his fiancée.

In sum, all of the *Turner* factors support a conclusion that the restriction on Plaintiff's visitation with his fiancée was reasonable. Again, the Court will order service of Plaintiff's claim against Defendant Armstrong for the permanent and unreviewable restriction on all visitation.

### G.     Equal Protection

Plaintiff asserts that he was deprived of equal protection of the laws because five named prisoners had all "caught cases" on visits involving substance abuse and smuggling, but had

never had all visitation privileges revoked.  The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"  *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges that he was treated differently from five prisoners who had also engaged in drug-related misconduct during visitation but had never had all of their visitation rights withdrawn.  Plaintiff fails, however, to identify any prisoner who was charged and convicted of felonies arising from conduct during visitation who did not have his visitation privileges revoked.

As a consequence, he has failed to identify prisoners who were similarly situated in all relevant respects. *See Tri-Health, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 791 (6th Cir. 2005) (discussing requirement that similarly situated inquiry requires disproving all conceivable bases for distinguishing comparables). In addition, Plaintiff fails even to argue that the difference in treatment was intentional.

Moreover, MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ XX makes clear that the Director has discretion whether to restrict all visits if a prisoner is convicted of a felony or misdemeanor that occurred during a visit. *See id.* (stating that "the Director *may* restrict all of a prisoner's visits if the prisoner is convicted or found guilty of . . . [a] felony or misdemeanor that occurred during a visit"). *Id.* (emphasis added). The Supreme Court recently has recognized that rational basis scrutiny is not properly applied to certain discretionary decisions, such as employment decisions:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 128 S. Ct. 2146, 2154 (2008). While the Supreme Court's holding in *Engquist* was limited to the employment context, the Court's broad language is equally relevant to a variety of prison decisions, including this one. In making a decision regarding which prisoners convicted of felonies or misdemeanors would be subjected to full visitor restriction, the Director reasonably could consider a multitude of factors, including the nature of the charge on

which the prisoner was convicted; the number of charges on which the prisoner was convicted; the prisoner's other relevant history; and the security classification at the facility in which the prisoner is housed (and therefore the available precautionary measures in place at the facility). Such factors reasonably could result in differing applications, depending on circumstances. As discussed in *Engquist*, the application of rational basis scrutiny "undermine[s] the very discretion that [the Director is] entrusted to exercise." *Id.*, 128 S. Ct. at 2154; *see also Franks v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at *8 (W.D. Mich. Mar. 31, 2010) (applying *Engquist* to parole decision).

For all these reasons, Plaintiff fails to state an equal protection claim.

### H.    Retaliation

Plaintiff alleges that all of his visitation was terminated by unspecified Defendants in retaliation for his complaints about the procedures leading to the visitor restriction on his fiancée. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has adequately alleged both the first and second elements of his retaliation claim. Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). In addition, the loss of visitation rights is sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.

Plaintiff, however, makes no factual allegations that would support the causation element of his claim. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him in restricting his visitation rights because he filed a grievance about another visitation restriction. Indeed, Plaintiff has failed even to allege that any Defendant who had the authority to terminate his visitation was the subject of one of Plaintiff's grievances. "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *See Ashcroft*, 129 S. Ct. at 1949. Accordingly, Plaintiff's speculative allegations of retaliation fail to state a claim.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Berghuis, Walton, Smith, Palmer, Kipp, Trip, Western, Stewart, Chaney, Caruso, Finos, Strub, Pallas, McLellan and Stapleton will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's request for class certification, as well as his claims of retaliation, deprivation of due process, and denial of equal protection. In addition, the Court will dismiss Plaintiff's Eighth Amendment and freedom-of association claims insofar as they arise from the restriction imposed on Plaintiff's visitation with his fiancée. The Court will serve the Eighth Amendment and freedom-of-association claims against Defendant Armstrong insofar as they arise out of the imposition of a permanent and unreviewable ban on all visitation.

An Order consistent with this Opinion will be entered.


Dated:    July 26, 2010            /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   UNITED STATES DISTRICT JUDGE