UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEXTER POOLE,

                Plaintiff,

v.

MICHIGAN REFORMATORY, *et al.*,

                Defendants.

_____/

Case No. 1:10-cv-378

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

      This is a civil rights action brought by prisoner incarcerated by the Michigan Department of Corrections (MDOC). This matter is now before the court on defendant James Armstrong's motion for summary judgment (docket no. 29). The motion is unopposed.

      **I.**      **Background**

      Plaintiff filed this action in the Eastern District of Michigan. *See* Compl. (docket no. 1). His complaint consisted of 102 pages and named 20 defendants. *Id.* The court dismissed some claims and issued an order requiring plaintiff to show cause why the remaining defendants should not be dismissed for failure to state a claim upon which relief may be granted. *See* Order (docket no. 6). Ultimately, that court transferred the action to this district. *See* Order transferring case (docket no. 13). Upon receipt from the Eastern District, plaintiff's action was screened in this court, resulting in the dismissal of all of the remaining defendants except for defendant James Armstrong, Manager of the MDOC Grievance and Appeals Section. *See* Opinion and Order (docket nos. 20 and 21). Pending before the court are plaintiff's allegations that defendant Armstrong violated his rights under the Eighth and First Amendments by imposing a permanent ban on all visitation.

In screening the complaint, the court summarized plaintiff's allegations as follows:

The allegations of Plaintiff's complaint are extremely muddled and fail to identify which Defendants are responsible for what portion of the conduct in issue. Plaintiff's subsequent filings in response to the Eastern District's order to show cause add little factual detail. Plaintiff's principal claim is that he was deprived of his due process rights in 2006 when he did not receive a timely hearing before his fiancée, Veronda Bethea, was placed on permanent visitor restriction. Plaintiff claims that Lieutenant Riley issued Plaintiff a proposed permanent visitor restriction on August 5, 2006, prohibiting Plaintiff from receiving visits from his fiancée because she smuggled heroin into Earnest C. Brooks Correctional Facility. The proposed visitor restriction was mailed to Veronda Bethea and given to Plaintiff. The form notified Bethea of her rights to present a statement and to appear and informed her of the date of the hearing, September 22, 2006. (See Proposed Visitor Restriction, docket #1-2 at 33.) The notice was rewritten on August 21, 2006, again setting the hearing date for September 22, 2006. (Proposed Visitor Restriction, docket #1-2 at 34.) Defendant McLellan mailed the notification to Veronda Bethea on September 15, 2006. (Id.)

Plaintiff argues that, under MICH. COMP. LAWS §§ 791.251(2)(d), 791.252, MICH. ADMIN. CODE R. 791.3315, and MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ TT, a prisoner may not be deprived of visitation unless a hearing is held within 30 days of the notice. Plaintiff also contends that MICH. COMP. LAWS § 751.252 and MICH. ADMIN. CODE R. 791.3315 require that a prisoner be allowed to make a written statement and appear at the hearing. Plaintiff states at some points in his complaint that his September 22, 2006 hearing date was untimely and that the hearing investigator and hearing officer did not comply with prison procedures. (See Compl., docket #1-2 at 9, 15, 20, 21, 23.) At other points, he alleges he never received a hearing. (See Compl., docket #1-2 at 10, 13, 14, 15.) Plaintiff acknowledges, however, that he received a hearing regarding the same issues prior to being placed in administrative segregation. (See Compl., docket #1-2 at 14.) He alleges that no written statement was taken from him or from his fiancée before the hearing and that he was not allowed to participate in a visitor restriction hearing. (See Compl., docket #1-2 at 9, 23.) Finally, he contends that his fiancée's request for rehearing was ignored.

Plaintiff subsequently was prosecuted and found guilty by a Muskegon County jury of being a prisoner in possession of contraband, MICH. COMP. LAWS § 800.2814, and of delivery or manufacture of less than 50 grams of heroin, MICH. COMP. LAWS § 333.7401(2)(a)(iv). Plaintiff alleges that, on September 27, 2008, he was informed that CFA Director Armstrong had extended his visitor restriction to all visitors on June 6, 2008. The latter restriction was imposed two years after the restriction was placed on his fiancée's visits and one year after Plaintiff was convicted of the felonies based on the conduct that occurred on August 5, 2006.

Under the policy, visitation with a particular person that is terminated for smuggling shall be for a period of at least three years, MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ VV, with annual opportunities thereafter for review. In addition, all visitation may be terminated by the MDOC Director if a prisoner is convicted of a felony or misdemeanor that occurred during a visit, MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ XX. Plaintiff argues, however, that MICH. DEP'T OF CORR., Policy Directive 05.03.140 ¶ YY requires that such a visitor restriction must be imposed within ten days after any felony conviction.

In his response to the order to show cause, Plaintiff made the following additional allegations against each of the Defendants. He alleges that Defendants Pallas and McLellan failed to obtain a written statement from either Plaintiff or his fiancée, Veronda Bethea, before the hearing on his initial visitor restriction. He alleges that Defendants Berghuis, Walton, Smith, Palmer, Kipp, Trip, Western, Stewart, Chaney, Caruso, Finos, Strub, and Armstrong were made aware of the policy violations, by way of his grievances or otherwise, but refused to take corrective action.

Plaintiff alleges that visitor restrictions were imposed in violation of various state procedures and in violation of his procedural due process rights. He also alleges that the visitor restrictions deprived him of equal protection and violated his rights under the Eighth Amendment. Further, he alleges that the visitor restrictions violated his right under the First Amendment to freedom of association. Finally, he alleges that the restriction on all visitation was imposed in retaliation for his complaints about the visitor restriction on the visits from his fiancée.

Plaintiff contends that the withdrawal of his visiting rights has resulted in wasted money for individuals who traveled to see him and impairment of his relationships with family members, including his four-year-old child. Plaintiff seeks declaratory and injunctive relief, as well as monetary and punitive damages.

Opinion at pp. 3-5.

## II.    Summary Judgment Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing

investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III. Discussion

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The record reflects that prior to filing this action, plaintiff filed a grievance at the Michigan Reformatory (RMI) contesting a visitor restriction placed on him by former defendant MDOC CFA Deputy Director Straub. *See* Grievance no. RMI-8-11-3271-28G ("3271") (docket no. 30-1).

In the Step I response, the Warden stated that he had no jurisdiction to respond to the allegations because the incident occurred at a different correctional facility (the Earnest C. Brooks Correctional Facility or "LRF") and plaintiff was prosecuted at that facility. *See* Grievance 3271 at p. 10. The incident involved the smuggling of contraband into a correctional facility on August 5, 2006, and resulted in Veronda Bethea pleading guilty to the offense. *Id.*; MDOC Offender Tracking Information (OTIS) profile for Veronda Michelle Bethea (docket no. 30-2). The Warden summarized the Step II investigation as follows:

> The incident did not occur at Michigan Reformatory, therefore we have no
> legal right to respond to an incident we have no knowledge of. Grievant is not

5

following proper protocols regarding his pursuit of this issue. All of grievant's visits were taken by Deputy Director Straub. Per PD 05.03.140, page 7, paragraph VV, states [sic], "After consultation with the Director, the CFA Deputy Director may authorize removal of a permanent visitor restriction upon the written request of the restricted visitor. A restriction shall not be removed until at least one year after the date of the incident; however, a restriction for any of the following reasons shall not be removed until at least three years after the date of the incident:

> 1 Smuggling, conspiring to smuggle, or attempting to smuggle a controlled substance, alcohol, a weapon, escape paraphernalia, cellular telephone or other communication device, or money guilty finding.

Grievant was charged and found guilty of one or more of the above. Since there is no apparent evidence of staff impropriety, policy, procedure or rule violation, no further action is required.

Grievance 3271 at p. 10.

Both the Step I and Step II grievances were denied. *Id.* On January 20, 2009, Manager Armstrong provided the Step III response to plaintiff's grievance, which upheld the Step I and Step II responses. *See* James Armstrong Affidavit at ¶ 14 (docket no. 30-1); Grievance 3271 at p. 8. In his supporting affidavit, Armstrong stated that "[o]ther than providing the Step III response, I had no personal involvement in the allegations contained in [plaintiff's] Complaint including [plaintiff's] allegation that I approved his visitor restriction." Armstrong Aff. at ¶ 15. Plaintiff did not contest these facts.

Based on this record, there is no evidence that Manager Armstrong had any contact with plaintiff in setting the visitor restrictions. Armstrong's only role was to provide a Step III response to a grievance contesting a decision by Deputy Director Straub to limit visitation. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73

Fed. Appx. 839, 841 (6th Cir. 2003).  *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001)

(observing that the denial of an appeal of a grievance complaining of inadequate medical care is not

the same as the actual denial of a request to receive medical care).  Accordingly, Armstrong is

entitled to summary judgment on plaintiff's claims.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Armstrong's

motion for summary judgment (docket no. 29) be **GRANTED** and that this action be terminated.


Dated:  October 18, 2011                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).